**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**DAN SCHMIDT,**
        **Petitioner,**

**v.**                                                      **Case No.  5:08cv329/RS/MD**

**WALTER A. MCNEIL,**
        **Respondent.**
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed a response, submitting relevant portions of the state court record.  (Doc. 11).  Petitioner filed a reply.  (Doc. 15).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate currently incarcerated at Santa Rosa Correctional Institution.  He is serving a twenty-five year sentence imposed for a crime committed

on April 16, 1994.  (Doc. 1, p. 1; Doc. 11, App. 1, pp. 18, 21-27 in ECF).[1]  His habeas petition claims the Florida Department of Corrections ("DOC") violated his rights under the Due Process Clause of the Fourteenth Amendment when it failed to award him the maximum amount of incentive gain time he was eligible to receive for the month of February 2007.  Specifically, petitioner states that under state statute, Fla. Stat. § 944.275(4)(b) (1993), and DOC rules, Fla. Admin. Code § 33-601.101, he was entitled to 25 days, but awarded only 22.[2]  (Doc. 1, p. 4; Doc. 11, App. 1, p. 40 in ECF).

Petitioner exhausted his administrative remedies by filing an informal grievance, a formal grievance, and appeal to the Office of the Secretary, all of which were denied.  (App. 1, pp. 41-45 in ECF).[3]  Petitioner then sought mandamus relief in the Circuit Court of  Leon County, Florida, which was denied.  (Doc. 11, App. 1, pp. 35-45, 46-49 in ECF).  His petition for certiorari review in the Florida First District Court of Appeal was denied on the merits. (App. 2, pp. 1- 10, p. 82).

———————————————

[1]Hereafter, all references to an appendix will be to that attached to Doc. 11.

References to page numbers "in ECF" are to the page of the identified document as it appears on the court's Case Management/Electronic Computer Filing system.

[2]Petitioner's various ratings resulted in a preliminary base gain time recommendation of twenty-two (22) days of incentive gain time.  (Doc. 11, App. 1, pp. 18-19 in ECF).  The preliminary recommended award was not modified upward or downward, and became the final determination. (*Id.*).

[3]The response to petitioner's formal grievance stated, in relevant part:

> In accordance with chapter 33 you are eligible for 22 days gain time if your performance and security ratings are above satisfactory.  Your Classification Officer may then agree with the matrix or modify it up or down.  Previously you consistently maintained above satisfactory ratings and were awarded a 3 day upward modification rating.  Due to the unsatisfactory rating in January for receiving a disciplinary report; this modification was not awarded for February as you failed to maintain a consistent pattern of above satisfactory behavior.  Maintain your above satisfactory ratings in the future and you may again be eligible for the modification.

(App. 1, p. 43 in ECF).  The Office of the Secretary adopted the institution's reasoning and further added:  "Chapter 33-601 defines satisfactory as an inmate who meets all the behavioral objectives. You have not presented any information or evidence that would indicate you did above and beyond that which is required of a satisfactory inmate."  (App. 1, p. 45 in ECF).

Respondent contends petitioner is not entitled to federal habeas relief, because he had no liberty interest in the three days of non-awarded gain time, and his claim that the DOC violated state law and department rules is a matter of state law not cognizable on federal habeas review.  (Doc. 11, p. 7).

## DISCUSSION

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 496 F.3d 1216, 1226–27 (11th Cir. 2007)

(holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones, supra* (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

A.     Clearly Established Federal Law

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV. Here, petitioner was not deprived of life or property; he is therefore entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. Determining whether one was deprived of liberty presents a unique challenge with prisoners, who "have *already* been deprived of their liberty in the ordinary sense of the term." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999). The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required: (1) when a change in his conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, *see Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital); or (2) when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *Wolff v. McDonnell*, 418 U.S. 539, 558, 94

S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that where the state created a statutory right to good time credits and recognized that such credits were to be forfeited only for serious misbehavior, prisoner's interest in such credits was sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to due process). "In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state." *Bass*, 170 F.3d at 1318.

B.    Federal Review of State Court Decision

In the instant case, the state court denied relief on petitioner's due process claim, concluding that Florida's incentive gain time statute did not create a right to the maximum allowed amount of gain time but was discretionary, and that the DOC's decision not to provide him with the additional three days of gain time was based on a valid reason that was well within the discretion afforded by the state statute and administrative rules. Specifically, the court explained:

> The court finds that the award of gain time is a discretionary act and inmates do not have a right to receive the maximum allowed amount of gain time every month. See § 944.275(4)(B), Fla. Stat. (1991) ("[f]or each month in which an inmates [sic] . . . uses time constructively or otherwise engages in positive activities, the department may grant gain time in accordance with this paragraph.'); Glenn v. State, 827 So.2d 292 (Fla. 5th DCA 2002); Singletary v. Hamilton, 661 So.2d 861 (Fla. 1995). Additionally, the court finds that the mere opportunity to earn gain time does not constitute a cognizable liberty interest. See, Luken v. Scott, 71 F.3d 192 (5th Cir. 1995).
>
> Because of Plaintiff's offense date, an above satisfactory rating in both evaluations warrants a preliminary base recommendation of twenty-two (22) days of gain time. R. 33-601.101(3)(d), Fla. Admin. Code. Any upward departure is at the discretion of the Department. The Department has provided a valid reason for their decision not to provide Plaintiff with the additional three days of gain time he requests. Therefore, the Department has not abused its discretion.

(App. 1, pp. 48-49 in ECF). The state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established Federal law.

Petitioner has not shown that being deprived of the additional three days of non-awarded incentive gain time essentially exceeded the sentence imposed for his underlying conviction. Thus, petitioner has not established a liberty interest in unearned incentive gain time arising from the Due Process Clause itself. *See Wolff*, 418 U.S. at 557, 94 S.Ct. at 1975 ("[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.").

With regard to a state-created liberty interest, in order for the state to create a right to incentive gain time, there must be a legitimate claim of entitlement or promise, not merely a unilateral expectation. *See Slocum v. Georgia State Bd. of Pardons & Paroles*, 678 F.2d 940, 941 (11th Cir. 1982) (holding that a due process constitutional deprivation is stated, if at all, only when the petitioner shows that the state created "a legitimate claim of entitlement . . . through statutory language creating a protectable expectation . . . .").

Under Florida law, the decision whether to grant incentive gain time, and the amount of any such award, is discretionary. Specifically, Fla. Stat. § 944.275, provides the following:

> (1) The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.

> (2) (a) The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
> . . . .

> (3) (a) The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section. The initial tentative release date shall be determined by deducting basic gain-time granted

from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
. . . .

(4) (b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph. The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.
. . . .

    2. For sentence imposed for offenses committed on or after January 1, 1994, and before October 1, 1995:

    a. For offenses ranked in offenses severity levels 1 through 7, under s. 921.0012 or s. 921.0013, up to 25 days of incentive gain-time may be granted. If granted, such gain-time shall be credited and applied monthly.
. . . .

(7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.

Fla. Stat. § 944.275 (2007).

    The DOC has adopted Fla. Admin. Code § 33-601.101, to provide procedures concerning awards of incentive gain time. Subsection (3) sets forth detailed methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components." Many factors are considered, including hygiene, appearance of clothing, adherence to rules and respect for others, maintenance of living quarters, work performance, and program performance. Fla. Admin. Code 33-601.101(3)(a)1, 2. This provides only the

preliminary base gain time recommendation, not the final determination. Fla. Admin. Code 33-601.101(3)(a)3.

The final determination of an award of incentive gain time is determined by the correctional probation officer or designee and is based on the inmate's overall monthly activities as reflected in the security and performance ratings. Fla. Admin. Code 33-601.101(3)(b). The officer or designee has the discretion to modify the recommended rating. If he concurs with the preliminary base gain time recommendation being applied, as is the case here, no modification is required. Fla. Admin. Code 33-601.101(3)(b).

The rules provide that incentive gain time awards are generally posted in the inmate's institutional records by the 12th of each month following the month of the award. Fla. Admin. Code 33-601.101(4). An inmate is not considered to have earned any incentive gain time until the month is complete, the evaluations have been submitted, and the award has been determined. Fla. Admin. Code 33-601.101(3)(c). The administrative rules also provide for notice of and an opportunity to contest the monthly gain time award. Inmates receive written notice of the monthly gain time award within three (3) working days of the last scheduled posting date; additionally, the next scheduled progress report reflects and summarizes the award of gain time made during the reporting period. Fla. Admin. Code 33-601.101(4)(a). An inmate may contest a gain time award or the failure to have received notice of an award by filing a formal grievance no later than the end of the month the award is posted. Fla. Admin. Code 33-601.101(4)(b).

Here, no argument is made that petitioner was granted the additional three days of gain time that the state later took away. The incentive gain time statute supports no "legitimate claim of entitlement" and creates no "protectable expectation" in the maximum amount of incentive gain time available. Inmates are eligible to receive a range of incentive gain time each month based on several factors, including the inmate's conduct. They do not have a right to receive the

maximum amount every month. To automatically grant the maximum amount of incentive gain time every month would defeat the central purpose of incentive gain time: "to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services." Fla. Stat. § 944.275(1).

Thus, nothing in state law required the DOC to award petitioner the additional three days of gain time, and it certainly did not require that such an award be made without regard to petitioner's behavior. Moreover, requiring petitioner to serve his term of imprisonment without receiving the maximum amount of discretionary gain time is "within the range of confinement to be normally expected" for one in petitioner's position. Therefore, not awarding him the additional three days did not impose an atypical and significant hardship upon him. And finally, it is worth noting that petitioner was provided notice of the award and an opportunity to contest the amount of incentive gain time awarded, which is more process than is constitutionally required.

Where an award of gain time is discretionary, courts have uniformly determined that a prisoner has no liberty interest in the opportunity to be awarded gain time. *See, e.g., Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006) (distinguishing between the divestment of credit already earned, which does implicate a liberty interest, and the loss of the opportunity to earn credits that are discretionarily awarded, which does not involve a constitutionally protected liberty interest); *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2nd Cir. 2000) (holding that although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the

opportunity to earn good time credit); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (applying *Sandin* and holding that the loss of the opportunity to earn gain time is not a constitutionally protected liberty interest); *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) (pre-*Sandin* case holding that no liberty interest arose from possibility of discretionary grant of incentive good time; "When a statute is framed in discretionary terms there is not a liberty interest created."); *see also, e.g., Hartley v. McNeil*, No. 5:07cv233/RS/AK (N.D. Fla. Mar. 23, 2009) (concluding that petitioner had no liberty interest in eligibility to earn incentive gain time), *mot. for certificate of appealability denied*, No. 09-12576 (11th Cir. Spt. 4, , 2009); *Hartley v. McNeil*, No. 5:07cv101/RS/EMT, 2008 WL 1844416, at *3-4 (N.D. Fla. Apr. 23, 2008) (concluding that the opportunity to earn incentive gain time provided by Florida law is not a sufficient liberty interest to invoke due process protections), *mot. for certificate of appealability denied*, No. 08-14493 (11th Cir. Oct. 24, 2008); *Hartley v. McNeil,* No. 1:07cv22683, 2008 WL 3200213 (S.D. Fla. Aug. 6, 2008) (concluding that liberty interests were not implicated by petitioner's loss of the eligibility to earn incentive gain-time as a result of his disciplinary conviction, despite petitioner's contention that his recommended award of incentive gain time had been disqualified due to the disciplinary conviction), *mot. for certificate of appealability granted*, No. 08-15292 (11th Cir. Jan. 20, 2009); *Hartley v. McNeil*, No. 1:07cv21731 (S.D. Fla. May 7, 2008) (same), *mot. for certificate of appealability granted,* No. 08-13455 (11th Cir. Oct. 27, 2008); *Figueredo v. Crosby*, No. 4:03cv262/SPM/AK (N.D. Fla. Aug. 16, 2004) (same); *Hollingsworth v. Crosby*, No. 4:02cv402/RH/WCS, *supra* (holding that petitioner had no due process liberty interest in eligibility to earn incentive gain time).

The state court's rejection of petitioner's due process claim was neither contrary to, nor an unreasonable application of, *Sandin*, or any other clearly established Federal law as determined by the United States Supreme Court. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d). Although

petitioner casts his quarrel with Florida's interpretation and application of Florida law in constitutional due process terms, that does not transform a claimed violation of state statutes into a constitutional deprivation. *Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions); *see also Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (stating that "a habeas petition grounded on issues of state law provides no basis for habeas relief" even when couched in due process terms).

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) be DENIED, and that the Clerk be directed to close the file.

At Pensacola, Florida this 9th day of November, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).